UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No. 2:25-cr-00026-NT |
| v. ) | |
| ABDIFITAH ABDI A/K/A "MOMO" ) | |
| ASMO DOL | |
| RAKIYA MOHAMED ) | |

**REPLY OF BRIGHT FUTURE HEALTHIER YOU LLC
IN SUPPORT OF MOTION TO STRIKE OR CLARIFY PREJUDICIAL REFERENCES**

INTRODUCTION

Bright Future Healthier You LLC ("BFHY") appreciates the government's response and, in several important respects, welcomes it. The government now makes explicit what BFHY has consistently maintained: BFHY is not charged with any crime, is not accused of criminal conduct, is not identified as a co-conspirator (indicted or unindicted), and is not alleged to have committed a single overt act. Those acknowledgements are significant, and BFHY does not minimize them. But the government's response ultimately underscores—rather than resolves—the core problem presented by the indictment. The government asks the Court to accept its post-hoc assurances while leaving untouched indictment language that has already been read by the public, the press, and third parties to imply that BFHY participated in criminal activity. A litigation position expressed in an opposition memorandum cannot cure prejudicial language embedded in a public charging instrument.

Courts have long recognized that an indictment is not merely a procedural pleading, but a public accusatory instrument with independent force and consequence. *See Russell v. United States*, 369 U.S. 749, 770 (1962) (describing the indictment as the "foundation of the

1

prosecution"). Because of that unique role, the fairness concerns associated with indictment language arise at the moment of charging—not later, and not only as to named defendants.

DISCUSSION

*I. The Government's Response Confirms the Premise of BFHY's Motion*

The government's opposition repeatedly and unequivocally states that BFHY is not charged with any offense and is not accused of criminal conduct. It further acknowledges that none of the overt acts alleged in the indictment were committed by BFHY, and that all criminal conduct is attributed solely to the individual defendants. The government also emphasizes that BFHY is not identified as an unindicted co-conspirator.

BFHY accepts those representations. Indeed, they confirm the very concern that prompted the motion: the indictment creates the appearance of criminal involvement by an uncharged entity notwithstanding the government's stated intent not to accuse it. If, as the government insists, BFHY engaged in no criminal conduct and played no conspiratorial role, then the dispute before the Court is not factual. It is structural and procedural—whether a public indictment may continue to contain language that reasonably conveys the opposite impression.

*II. The Government's Assurances Do Not Cure the Prejudice Caused by the Indictment*

The government argues that its response "provides clarity" and therefore moots any need for relief. That contention misunderstands both the nature of the harm and the function of an indictment.[1] An indictment is not an internal roadmap for litigants. It is a public act that carries

---

[1] As noted in its prior filing, BFHY's counsel had previously conferred with government counsel in a good-faith effort to resolve these concerns without court intervention. During those discussions, BFHY acknowledged that a clear public clarification from the government in a responsive brief might alleviate the issue. After reviewing the government's filed response and considering the issue further, however, BFHY concludes that clarification solely in an opposition memorandum does not sufficiently address the ongoing prejudice created by the indictment itself.

2

consequences beyond the courtroom. *See United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (recognizing that indictments have public and reputational consequences independent of adjudication). Those audiences do not read opposition briefs. They read indictments. And they reasonably infer meaning from the way those indictments are written.

Here, the indictment repeatedly places BFHY within the narrative of the alleged conspiracy, uses language stating that conduct involving BFHY was "part of the conspiracy," and incorporates BFHY-related allegations into substantive counts through incorporation by reference. That structure and phrasing predictably—and demonstrably—creates the impression that BFHY itself engaged in wrongful conduct. The government does not meaningfully dispute that such an impression has already occurred.

The fact that the government now disavows any intent to accuse BFHY does not eliminate the ongoing prejudice caused by leaving that language in place. Courts do not remedy unfair indictment language by trusting that later filings will be read as disclaimers. They remedy it by correcting the indictment or clarifying the record in a manner that travels with the charging document itself. *See United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989) (recognizing courts' authority to limit indictment language that could mislead as to the scope of criminal accusations).

III. The Absence of the Phrase "Unindicted Co-Conspirator" Is Not Dispositive

The government places substantial weight on the fact that BFHY is not labeled an "unindicted co-conspirator," and therefore contends that cases addressing such designations are inapposite. That argument elevates form over substance.

---

This reply is offered in that same cooperative spirit—not to criticize the government's position, but to explain why limited formal clarification remains appropriate.

Courts have not limited their supervisory authority to cases where a particular label is used. The concern animating decisions such as *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975), and *United States v. Anderson*, 55 F. Supp. 2d 1163 (D. Kan. 1999), is not semantic; it is functional. The problem arises whenever an indictment attributes conspiratorial conduct to an uncharged person or entity in a manner that publicly suggests criminal culpability without affording a forum to respond. *See Briggs*, 514 F.2d at 796 (warning that indictments should not "accuse persons of a crime while affording them no forum in which to vindicate themselves"); *Anderson*, 55 F. Supp. 2d at 1166–67 (ordering relief to prevent reputational harm to uncharged parties identified in charging papers).

Here, the indictment alleges that it was "part of the conspiracy" that BFHY paid for purported services, and that defendants filed documents to make it appear that services were rendered to BFHY. Those allegations are framed as components of the conspiracy itself. Whether or not the indictment uses the words "unindicted co-conspirator," the effect is the same: BFHY is placed inside the alleged criminal scheme.

The government's own response reinforces this point. It goes out of its way to clarify that BFHY committed no overt acts and is not accused of wrongdoing—clarifications that would be unnecessary if the indictment did not already suggest otherwise.

## IV. The Challenged Language Is Unnecessary in Light of the Government's Position

Striking or clarifying the challenged references would not impair the government's ability to prosecute the individual defendants. The government concedes that all alleged criminal conduct was committed by those defendants alone. If that is so, then language that implies participation by BFHY serves no essential charging function.

Courts routinely strike or limit indictment language where allegations are both prejudicial and unnecessary. *See United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006); *United States*

*v. Cooper*, 384 F. Supp. 2d 958, 960–61 (W.D. Va. 2005). The government's concessions here establish precisely that condition.

The government characterizes the references to BFHY as "background and context." But context is not neutral when it causes concrete reputational harm to an uncharged entity—particularly where the government now agrees that the entity did nothing criminal. Background that misleads is not harmless surplusage.

*V. Narrow Clarifying Relief Is Warranted*

BFHY continues to seek limited, targeted relief. It does not ask the Court to resolve disputed facts, dismiss counts, or excise all references to the company. It asks only that the indictment be corrected or clarified so that it does not continue to operate as a public accusation against an entity the government agrees is not accused of wrongdoing.

Notably, the government suggests that if BFHY seeks clarity that it is not accused of criminal conduct, the government's response should suffice. Respectfully, if that clarity is appropriate—and the government plainly believes it is—there is no principled reason it should not appear in the formal record in a manner that accompanies the indictment itself. Adopting such relief would not prejudice the government. It would simply align the public charging instrument with the government's stated position and basic principles of fairness.

CONCLUSION

The parties are not in dispute about the most important point: BFHY is not charged with, and is not accused of, any crime. The only remaining question is whether the indictment should continue to read in a way that suggests otherwise. Because a litigation brief cannot cure prejudicial indictment language, and because the government's own concessions confirm that such language is unnecessary, the Court should grant BFHY's motion to strike or, at minimum, enter narrowly tailored clarifying relief.

5

Dated: February 20, 2026

Respectfully submitted,

/s/ Michael J. Conley
Michael J. Conley, Esq.
Zerillo Law Office
1250 Forest Ave., Suite 3A
Portland, ME 04103
Telephone: (207) 618-6555
Email: michael@zerillolaw.com
Counsel for Bright Future Healthier You LLC
(appearing solely for purposes of this motion)